The next case this morning is 523-0314, People v. Trimble. Arguing for the appellant is Brian Josias. Arguing for the athlete is Lynn Harrington. Each side will have 15 minutes for their argument. The appellant will also have five minutes for rebuttal. Please note, only the clerk of the court is permitted to record these proceedings today. Morning, counsel. How are you all? Fine. Thank you, Gordon. Good morning. Thank you. Um, as Madam Clerk stated, I believe someone, maybe Mr. Josias, requested additional argument time. Uh, there are a lot of issues in this case, obviously. Uh, that was granted. Um, just want to make sure that that, you know, we were clear on that, and I think the timer reflects that. Um, so, with all that being said, go right ahead. Thank you, Your Honor. Brian Josias, Assistant Appellant Defender with the Office of the State Appellant Defender, on behalf of the Defendant Appellant Nicholas Trimble. May it please the court and counsel. Mr. Trimble's conviction for first-degree murder should be reversed because, for multiple reasons, the trial court failed to ensure he received a fair trial. The trial court's errors were substantial because not a single occurrence witness identified Mr. Trimble to support the state's entirely circumstantial case, and Mr. Trimble never made any incriminating statements and instead offered a corroborated alibi. Taken individually or cumulatively, the errors below denied Mr. Trimble a fair trial and resulted in his conviction. This court should remand for a new trial. First, the trial court erred when it failed to properly respond to multiple jurors informing the court they had been exposed to potential jury tampering and ex parte communications from a third party. At least two jurors were potentially exposed to rumors or other extrinsic information that likely impacted their deliberations. But critically, the trial court failed to conduct an adequate inquiry to protect Trimble's right to a fair and unbiased jury. Now, there's no question that the Constitution guarantees Mr. Trimble's right to an unbiased jury who considered only properly admitted evidence in their deliberations. And there is likewise, no question here- Counsel, can you hear me? Yes, sir. What exactly, you're going to the results. What actually happened? What did they say? So, we only know that one juror, because only one juror was examined in any detail, that's Juror Sims. And Juror Sims indicated that the night before deliberations, she had been, she heard, she said some rumors about the case and about the victims in particular, and that she was curious about them and had learned these rumors. We don't know, because the court didn't do much of an inquiry here. And again, that's one of our critical issues. We don't know what exactly she heard, who she talked to, what they said, how long the conversation went, et cetera. All we know is that someone said something to her about this case that caused her to say that she was afraid she couldn't go the way the others were going. And this caused her to- What about the state's point that this issue is forfeited? Did trial counsel object to these witnesses? Excuse me. No, Your Honor. Trial counsel did not object. And so that is, although we would, it's our position that this could be raised under either plain error or the fact that Mr. Trimble did bring these issues up in his pro se post-trial motions. In addition, as Your Honors are aware, we've raised this as an issue of ineffective assistance for failing to object to this area or to request that the court conduct additional voir dire or ask these questions themselves. The plainly established law does require that the trial court, though, conduct an inquiry when faced with this type of information. So that's where it's our position this amounts to plain error, is that this type of either in a closely balanced case, it's our position this is a closely balanced case, or because this goes to the integrity of the jury and the nature of the evidence they've considered, we would also argue that it goes to second-prong structural error because it impacts that fundamental right to a unbiased jury. Now, again, the issue is not just that the evidence... The second jury didn't say anything, did he? And that's correct. The second juror, there was no inquiry whatsoever to understand what their concerns, that's juror McMaster's, why they had raised an issue. They simply just said, oh, no, I'm okay. So that's a critical issue is the court's failure to conduct any inquiry when faced with this information to determine if the jury remained free of outside bias and influence. And again, private communications between a juror and a third person are absolutely forbidden and invalidate the verdict, at least unless their harmlessness is made to appear. And here we don't have that. That's from people we hobbly. And if it does come to the attention of the trial judge that even one juror may have been exposed to outside influence, an inquiry is required. But here the circumstances, as your honor asked, are a bit vague, but it's apparent that a few hours before, or excuse me, after deliberations began, the court did receive information that a juror or jurors had concerns about their ability to deliberate. And this should have triggered that duty to conduct a complete inquiry. Now, again, it is true the trial court has discretion in how it exercises this duty to do an inquiry. But again, in order to exercise that discretion, the trial court must at least perform an inquiry. And the state does not dispute that the trial court has a duty to inquire. Now, there's no question the trial court failed to ask juror Sims or McMasters who contacted them, what exactly they said, when the contact occurred. And the court also failed to ask either juror if they had spoken to other jurors about those contacts. And then of course, certainly did not inquire with the other jurors. Now, the trial court, again, this issue was raised in the post-trial motion and a record was created. And so the court did have an opportunity to correct this issue. And again, not to mention plain error. The evidence here, and I want to stress this for a moment, was closely balanced. Again, Mr. Trimble did offer a corroborated and credible alibi. No murder weapon or evidence regarding a second shooter was ever recovered. There was no occurrence witnesses who could directly identify Mr. Trimble. And the cell phone evidence, the critical cell phone evidence was arguably as exculpatory as it was incriminating. The poor quality video evidence of the offense itself and the delayed identification did little to remedy these issues. And there was almost no forensic evidence linking Mr. Trimble to the offense. The closely, and again, the closely balanced evidence analysis does not involve the sufficiency of close evidence, but rather the closeness of sufficient evidence. And so while the state may argue that the evidence was sufficient to convict here, that's not the nature of the inquiry in a closely balanced case. It's whether or not there was closeness of the evidence. And this issue standing alone requires reversal for a new trial before a fair and unbiased jury. But that's not the only issue. Obviously, as your honor mentioned, there are numerous issues in this case. The trial court also committed numerous errors related to the evidence when it failed to properly apply the rules of evidence and provide a check on the state's overzealous prosecution. Now we have four broad areas of error here. First, the trial court erred when it allowed the state to repeatedly introduce irrelevant, unreliable, and inadmissible out of court statements allegedly made by the victims prior to the shooting. Second, the trial court allowed the state to introduce more inadmissible hearsay related to Karina Bernal's delayed, indirect, and derivative identification of Mr. Trimble as the shooter based on her review of the video evidence. And third, the trial court erroneously admitted an indictment containing irrelevant, unproven, and inflammatory evidence of other crimes for the alleged purpose of impeaching Mr. Trimble's trial. The trial court failed to correct the state's efforts to shift the burden of proof in its closing statement when it implored the jury to convict Mr. Trimble because its version of events was simpler than the version of events offered by Trimble's defense. Now first, the victim's prior statements that he was going to meet with, quote, Karina's boy from Champaign should not have been admitted. Now those statements were inadmissible hearsay offered to prove the truth of the matter asserted that Trimble and Aravelo, that's the victim, did in fact meet later that evening. And during closing arguments, the state specifically stated that Trimble had a meeting with the victim, quote, excuse me, had had a meeting with the victim on the day of the murder at the scene of the murder to buy drugs, and not only on the day of the murder, but right around the exact time of the murder. Now, the statements of Mr. Aravelo were not statements of then existing state of mind. The case law is clear. Statements of intent are only admissible to prove the future conduct of the declarant. That would be Mr. Aravelo, and not as evidence of a future conduct of a third party, that's my client, Mr. Trimble. But that's precisely what the state sought to do here, prove the future conduct of my client, Mr. Trimble. This error was not harmless, and it does bear repeating that the evidence of Mr. Trimble's guilt was far from ironclad. Likewise, the copious hearsay statements describing the circumstances and the substance of Bernal's identification were inadmissible. Now this is all covered under section 115-12 of the Code of Criminal Procedure, and that provides that a statement is not rendered inadmissible by the hearsay rule if the declarant testifies and the declarant is subject to cross examination, and the statement is one, and this is critical, of identification of a person made after perceiving him. It's our position that perception of the person who's being identified must have been a live perception of them, not based on video evidence alone. And again, as we expressed in our brief, the legislative history and case law supports the conclusion that this section applies only to prior identification statements made by victims or eyewitnesses after they perceive the person committing the offense, and not here as a derivative identification made after the fact by a non-occurrence witness. And in this case, it is so critical because Ms. Bernal is the only person who says that the person shown in the video, depicted in the video of the offense, is my client. She was the only person to make that identification out of anybody who viewed either the offense or who was a live occurrence witness. And so it's our position that consistent with the goal of the statute of the legislature, it should be construed to include the requirement that the person who's testifying to the statement of identification have perceived the offense. And again, the trial court here compounded the prejudicial impact of its erroneous admission of Corrina Bernal's delayed out-of-court video statement identifications by allowing the state to piggyback on the erroneous admission of those and repeatedly introduce additional extraneous hearsay describing or recounting Bernal's out-of-court identifications and making it appear as though she had repeatedly made that identification and bolstering that identification in a cumulative fashion. This case is similar to a recently decided case, People v. Myers, that's cited in our reply brief. That's 2023 ILAP 1st 210642. And in that case, the state did this very similar thing here and introduced testimony from a police detective describing out-of-court statements of identification by a non-occurrence witness. And the appellate court 1st District rejected the state's arguments that the trial court properly admitted those statements under Section 115-12. And we believe this court should reach the same conclusion here. I have only a few minutes left, so I'd like to also address a few other things. The trial court here also erred when it admitted irrelevant and unproven and inflammatory evidence of other crimes in the form of an indictment from Trimble's prior conviction. Now, again, it's critical that only convictions and not mere indictments or arrests may be used to impeach the credibility of a witness. And evidence of a mere arrest does not possess the indicia of reliability required for admission as evidence. But that's precisely what was admitted here, was evidence of simply an arrest, an indictment. But it's very critical that the evidence that was admitted here, the indictment, included inflammatory allegations that were, again, unproven and that did not result in a conviction. And this evidence had the tendency to not only seek the goal that the state admitted it for, which was obviously to impeach Mr. Trimble, but also to suggest that he was a violent and unhinged individual who could commit these types of offenses. And again, the charges in that indictment did not lead to a conviction on those particular charges. It's also critical here that the evidence that was admitted that goes to the which related to an offense, an assault, the evidence that came in was a certified record of disposition that included notations that indicated that the offense of conviction was different from the one that was actually, that Mr. Trimble was convicted of. And so, the record actually doesn't show that Trimble was ever arrested or convicted of a battery on police officer. And the state can't show, hasn't shown a shred of evidence to prove that that was what he was convicted of. So, Trimble did not lie on the stand when he said that he had never been convicted of aggravated battery of a police officer. But this evidence was allowed to be used to an attempt to show that that did in fact happen. Now, again, as I mentioned earlier, these issues were all exacerbated by the constitutionally ineffective assistance of received. Among other things, trial counsel failed to challenge the admission of highly prejudicial and inadmissible prior and consistent statements that we talked about, failed to properly object to the admission of the statements of Aravello and Roman's hearsay, failed to request proper jury instructions, including essential limiting instructions, which could have helped at least to blunt some of the impact of this inadmissible hearsay, and failed to properly proffer a presentation that presented critical context for the state's purportedly incriminating cell phone tower evidence. And to compound these issues, Mr. Trimble did complain about the service that his attorney was rendering during the trial, but the trial court failed to properly address that. I see I've run out of time, so if there's no further questions, we rely on the arguments presented in our briefs, which demonstrate the numerous errors below deprived Mr. Trimble of a fair trial and allowed the state to overcome lack of any convincing evidence of his guilt. Accordingly, this matter should be reversed and the matter remanded for a new trial before an unbiased jury and with the benefit of competent counsel who will help ensure the state may only use relevant and admissible evidence to attempt to prove Mr. Trimble's guilt beyond a reasonable doubt. Alternatively, the matter should be remanded for further post-trial proceedings pursuant to People v. Krankel, as we've argued in our brief. Thank you for your time, your honors. Thank you, counsel. Like I said before, there were a lot of issues involved in this one. Before we move on, Justice Scholar or Justice Welch, do you have any questions? Questions. No questions. Okay. And obviously, counsel, you're going to have your time for rebuttal. Thank you. Ms. Harrington, go right ahead. Good morning, your honors. Counsel, may it please the court, my name is Lynn Harrington and I represent the people of the state of Illinois. Your honors, before engaging in arguments in response to what counsel has brought up this morning, I feel it necessary to point out to page 15 in his reply brief and something that he repeatedly mentioned at oral that is quite confusing to the people. So if you'll indulge me, on page 15 of his reply, counsel says, as Trimble pointed out in the opening brief, the record does not contain a scrap of evidence to support the state's contention that Trimble was ever arrested for any kind of battery on a police officer. The state does not muster a word in response to his argument or a shred of evidence to prove that its contentions are true. Your honors, this is completely belied by the record. In fact, in the people's brief, the last full paragraph on page 37, we say here, the trial court properly allowed into evidence people's exhibit 53, which contained a certified copy of defendant's conviction for aggravated battery of a police officer, which was in count five of the information to which he pled guilty. The exhibit also contained the information, the four other counts to which defendant was not convicted. You can find this exhibit, your honor, in the people's exhibits on page E-231. It specifically says the charge, your honor, is agbat slash harm slash police slash DOC slash DRS with a statutory site and plea to guilty. Defendant has offered no evidence to the contrary that this is not a proper certified conviction, and therefore his claims with regard to this should be completely forfeited. In the issue of the jurors in this case, your honor, the trial court conducted a proper inquiry of jurors Sims and McMasters into their, well, at least Sims' possible concerns about jury tampering and ex parte communications. As this court has noted, this issue, among many of the issues defendant raises in his brief, has been forfeited, so we must engage in a plain error analysis. And of course, we know that we first start in determining whether there was any error at all. Your honors, a review of the record shows that no error occurred here. As this court is held in 2020 and holiday, a mistrial is only required when the jury was so influenced and prejudiced that it could not have been fair and impartial. And a finding of no prejudice is sufficient if a juror can lay aside her impression and opinion and render the verdict based upon the evidence. We literally have these exact words in the record, your honor. The trial court questioned juror Sims about what she was concerned about. She referred to them first as rumors, and more important, something that the defendant does not raise here. She said the rumors were about the victims, not about the defendants. And that actually goes into defendants' later arguments on ineffective assistance of counsel. If this was information on the victims, that maybe they were these horrible drug dealers and maybe they had stoled and there wasn't any evidence that Trimble was involved in that, that would really help the defendant's case. Maybe that's why he didn't say anything. The trial court specifically said after it finished its questioning to the parties, the prosecution and defense, do you have any more questions? They said no. Both jurors, Sims and McMaster, said they could disregard anything they heard outside of the courtroom and deliberate only on the evidence presented at trial. And as I noted in my brief, they also came forward of their own will. In defendant's reply brief, he says, well, this isn't accurate because Sims said she learned the information the night before, but she didn't bring it to the foreman until they started deliberating the afternoon after. That has nothing to do with the fact that Sims did not bring it of her own will to the foreman who told the bailiff, who told the trial court. Your honors, we're looking at an abuse of discretion here. And we know the trial court has a wide abuse of discretion because it's the one looking at these jurors in the face. It's the has to determine if there's a problem here or not. And it properly did all this and properly determined that the jurors, Sims and McMaster's were being honest when they said they could forget about anything outside the courtroom that they had heard. And to the state, I mean, going back to that, if I'm recalling correctly, I think either one or both that stated that they had not made any statements to any of the other jurors regarding these issues, correct? I believe that is correct, your honor. Yes. And that also goes towards defendant's claim that the trial court did not inquire of any of the other jurors. But when he says that, he said it's no authority for the proposition that we need to pull all the jurors in. And as our Supreme Court said in People versus Runge in 2009, sometimes less is more. You ask, you keep on asking more questions and getting people involved and getting people scared. Now you've got a problem where you didn't have one at the beginning. This is a discretionary decision that the trial court properly ruled that the jurors could be completely impartial. Which is exactly why you pull the juror out individually instead and ask those questions, correct? Exactly, your honor. Exactly. So the veneer is not tainted and the trial court did a great job at that. Even if this court does find error, your honors, however, there's no plain error at all. Contrary to defendant's arguments, the evidence in this case is not closely balanced. Defendant would like to completely ignore the fact that this is 2024 and that we have video surveillance almost everywhere. It would be nice for him if this were the 1970s and we didn't have that. But in this case we do. We have video surveillance of the defendant walking into that house. We've got his ex-girlfriend for now, who had no motive to lie whatsoever, identifying him in 11 screenshots in the video. Unfortunately for the defendant, he also wore a distinctive hat that day that he took a picture of himself and posted on Snapchat wearing the exact same hat on the day of the under Illinois Rule of Evidence 803 about Aravalo's state of mind that that day saying, hey, I can't go out to dinner with you. Hey, I'm waiting on Karna's or her last name is Bernal's guy to come to come meet me, the guy from Champaign. What about counsel's argument, though, that this was introduced, that information was introduced to essentially point to the Thank you, Your Honor. There's absolutely no evidence of that whatsoever. He likes to take and look at the saying that the declarant, at least not in oral argument, but in his brief, that we were the trial court was looking at the declarant as the defendant. No, the declarant was clearly Aravalo. And it was proper under 803 for all about Aravalo's state of mind for his intent and his plan. And it also contradict the defendant's testimony himself that, I canceled with that guy earlier in the day. I never showed up. Well, guess what? We've got four witnesses who said otherwise, at least two of them minutes before the murder, saying we were at their house with our kids. We invited them to dinner, invited him to dinner. He said he couldn't go. He was waiting on this guy from Champaign, Bernal's guy. So that evidence was completely proper as well, Your Honor. In addition to the overwhelming evidence of guilt, we've got the cell phone from an FBI expert showing how it pinged from where defendant was until he got to Champaign around the times of the murder. And we've got the defendant's girlfriend, who unfortunately did not make a very good witness for him, who said that, well, sure, we went to Champaign to get some stuff for a shadow box for my deceased infant. But you know what? I can't remember the date that was. So she never pinned it down to the murder. She freely admitted that she considered herself defendant's get-out-of-jail-free card. So all this evidence taken together, Your Honor, shows that was not closely balanced whatsoever. With regard to second-pronged plein air, our Illinois Supreme Court and People v. Thompson said if there's no evidence of jury bias, then there's no structural error. And the record proves that in this instance, Your Honor. With regard to the second argument about the four witnesses who were allowed to testify, I believe I covered that. It is an abuse of discretion. This court specifically said in Rattow in 2017 that whether the trial court allows information in as an exception to the hearsay rule is an abuse of discretion. So all those, Bernal, Shane, Aravalo's boyfriend, Jesus Rodriguez, and Miriam Rodriguez, their testimony was properly admitted. The third argument is that the trial court absolutely did not err in admitting prior ID testimony of Bernal, Detective Carley, Miriam, and Maria Prado, who was Aravalo's sister. Again, this issue is forfeited because it was not brought up in the trial motion. There's also no plain error here. Because as counsel brought up in his oral argument, section 115-12 of the code specifically says a statement is not rendered inadmissible by the hearsay rule if A, a declarant testifies at the trial or hearing. We've got that. B, the declarant is subject to cross-examination concerning the statement. We've got that. And C, the statement is one of identification of a person made after perceiving him. Now, defendant would like this court to limit the statute, which as we well know is not permissible. There's no limitations or exceptions that should be put on a statute when it can plainly be read. And our second district specifically brought this up in Neal. It said we're not limiting section 115-12. Video is here to stay, your honors. And it's good evidence. We can't ignore it. That's exactly the evidence so Bernal could testify that she looked in 11 screenshots and identified the defendant. All that information was properly admitted into evidence. The defendant makes several little claims within this argument about Miriam's comment that the first time she however, she was shocked. That is also long held that testimony of demeanor is not hearsay. And it's also important for the charge of fact to give weight to that testimony. Well, maybe the reason why Bernal did not originally identify defendant is because she was shocked and scared. And Miriam could properly testify about that. With regard to defendants, other crimes, your honor, as the people have initially noted in the oral argument. First, there's no abuse of discretion. We've got triplet in Illinois Supreme Court from 1985. So it's well settled that this is a discretionary issue. Again, we've got forfeiture. There was no objection at the hearing on the motion in Lemonade. And something that defendant does not, I believe, address in his reply brief that I addressed in my original brief is that at the motion on the hearing and at the hearing of the motion in Lemonade, the state said they wanted to introduce evidence of defendant's criminal history. And defense counsel does not object to that. So that's not just the conviction for aggravated battery of a police officer. That would be the other four counts aggravated domestic battery of trying to strangle aggravated two counts of that robbery and unlawful restraint. That all was properly allowed in. In addition to that, that evidence was also allowed in because it showed a defendant's motive to testify falsely. We know defendant got up in the stand and said, what? No, I have never been charged or I've never been convicted of aggravated battery of a police officer. That's a lie. That's a lie. And we know it's a lie. And it's in the record. And it's a certified copy of conviction. And it can be found on page E230 of the People's Exhibit 55, I'm sorry, 53. With regard to defendant brought up in his reply brief, and he brings up today, the Myers case, the Myers case doesn't help his issue at all with regard to this point. First of all, Myers was a post conviction petition on the first stage. And what it talked about was that you couldn't allow the ID testimony and it was a robbery case. And the detective got up in the stand and said, two other individuals testified about that the defendant was trying to steal a gold bracelet. And the public court said, this has nothing to do with the issue at hand. This is not proper ID testimony. Absolutely not the case here, Your Honor. This was proper ID testimony admitted into evidence. With regard to closing arguments, Your Honor, again, defendant has forfeited this issue, but there is no error whatsoever. This court in Boone and this year 2024 in paragraph 88. I'm sorry. Oh, I thought somebody asked a question. Said that the standard of review is abuse of discretion. Defendant disagrees and says it's de novo. But actually what that is, is if the trial court finds any error, then the de novo standard takes effect and they start looking into whether it was so inappropriate that the case must be reversed or remanded. Nothing happened to that effect here, Your Honor. The state was given a great deal of latitude of the cases that defendant cites to our cases where the defendant never brought up any evidence. That's not the case here. He got up on the stand. He said what he thought, you know, what he wanted the jury to hear. His girlfriend got up in there. It was totally proper for the state to comment closing argument. Okay, everybody, you got two choices to make, because that's the truth. You have two choices to make. And the prosecutor properly went through all of the evidence and to show why they had proven beyond a reasonable doubt the defendant was guilty of both first-degree murders. With all these reasons, Your Honor, the people respectfully request that this honorable court affirm those convictions of first-degree murder and his sentence to natural life imprisonment. Thank you. Just, I just want to, again, I've said this several times, there is a lot going on in this case, you know, several. So I understand trying to go at breakneck speed to get through it. And I appreciate that. But I just want to make sure you didn't hit on the crankle, but the response in your brief to the crankle issues is that the state's opinion or their argument is that the trial court did make a sufficient crankle inquiry at the trial level, correct? That is very correct, Your Honor. And I'm happy to go through it if you'd like me to, but yeah, I can also stand on my brief. Yeah, I personally, myself, don't think so. I just wanted to make sure we got that on our arguments today. Now, I will say, Justice Scholar or Justice Welch, obviously, do you have any questions? No questions. Not at this time. And I would also, based on my question, if either one of you believe you'd like to give Ms. Harrington a little time to, you know, flesh out the crankle issue, I'd allow that if you think it's necessary. No. No, I don't believe it's necessary. I agree. Okay. Well, thank you then. Thank you, Your Honors. Thank you. Mr. Josiah, go right ahead with your rebuttal. Thank you, Your Honors. I'd briefly like to start with the point that counsel made regarding the prior convictions and our assertion in the reply brief that there's no evidence to suggest or to support the contention that Mr. Trimble was convicted of aggravated battery of police officer. Counsel cites to a page on the certified record of disposition a reference, a code, as I recalled it earlier, AGBAT slash harm slash police slash DOC slash DHS. That's the only piece of evidence that could possibly support the contention. The indictment does not contain a charge for aggravated battery of police officer. I would invite the court to scrutinize this in detail. It simply is not true that Mr. Trimble was charged with or convicted of. There's no evidence to show that he was charged with or convicted of aggravated battery of police officer. The relevant statutory citation for battery allows a number of factors to be considered in elevating that charge to an aggravated charge. We explained in our brief how that could potentially be some sort of confusion. He may have been convicted of aggravated battery for some other reason, but not because of aggravated battery to a police officer. That's why this evidence is so prejudicial and so confusing and why it was so damaging for it to be admitted and create the suggestion that Mr. Trimble had been convicted of an offense that he was not convicted of. Again, this goes back also to the ineffective assistance that Mr. Trimble received and that wasn't adequately explored at the Crankle hearing where this particular issue could have been fleshed out, could have been a proper record prepared so that we could evaluate this correctly and really understand the huge danger and the huge prejudice that my client suffered as a result of this that made it appear on the stand that he was lying when in fact he was not about this critical issue. Also, with respect to the trial court's discretion regarding the inquiry into the juror, Your Honor, Justice Booey, you asked whether the jurors had said they had spoken to anyone else. They were not asked that. I welcome you to look at the record, but my recollection of that record is that they were not asked if they'd spoken to anyone else. To the point of less is more and whether or not the jurors needed to be polled, it's not our suggestion that the jury needed to be polled. I understand that that could create a risk of tainting the veneer, but at a minimum, that question should have been posed to the two jurors who said they had been contacted. Did you speak about this to any other jurors? They were not asked that. In fact, we know they spoke to at least one person because they brought this issue to the attention of the foreperson who then brought it to the attention of the bailiff. To be clear, the trial court never specifically asked who they spoke to. Is that correct from the record? That's correct. They never asked that. Instead, what we raised to bring facts to the court's attention, the court was quick to jump in and say, but you can be fair. You're not going to be biased by this. Instead of trying to explore what actually happened, it was clear that the court, who had already lost one of the alternate jurors due to the fact they were sleeping, and this was late in the day on a Friday, it's clear that the court was trying to move this case along and keep this jury together instead of performing the proper inquiry to determine whether or not my client was going to receive a fair and unbiased jury to determine this critical case that was close. And that's where I'd like to finish. The video evidence that counsel refers to, again, no other person looked at that video other than his jilted ex-girlfriend and said, that's Mr. Trimble. We don't know how many people looked at that video, but many, many people could have looked at that video. Let me stop you there, counsel. The video was introduced as evidence. The jury was able to see the video. Is that correct? Correct. But the jury saw the video with the taint of Bernal's aggrieved identification and layered on top of it the evidence that the state identified. All the people who testified about that were the victim's family members who were searching for something, who had come to the police with numerous theories and were trying to find something to support who murdered these people. This was not some innocent civilian. These were people who had been involved in the drug trade. They were armed. They were clearly ready for some sort of conflict or something. And again, that's why also my client's criminal history is so critical because this is completely out of context. He had no type of history to suggest this type of thing was ever going to happen. And I see a run out of time, so I'm afraid I can't go ahead and finish your statement. The final point I wanted to say is that counsel talks about how the Trimble had a meeting to show up, that this statement, Karina's boy from Champaign shows that he was going to come up. That highlights the danger of introducing these type of out-of-court statements, hearsay, to prove that my client came because we don't know from saying Karina's boy, who is Karina's boy? And my client never got the opportunity to cross-examine on those statements because they were out-of-court statements admitted for their truth. And that's the danger of those. And that's why this court should, why the trial court below erred in why it was plain error to do so, and why my client's conviction should be reversed and remanded for a new trial. Well, thank you, counsel. Obviously, we will take the matter under advisement. We will issue an order in due course. That concludes our oral argument portion of today's docket. And I believe that was also conclude our docket for the week. It's been a long week. We've read a lot of cases. So I apologize. This court will stand in recess until our January docket. So, counsel, I've been telling everybody, thank you today. We hope you have a great day. And more we hope you both have a great holiday with your families. Thank you very much, your honor.